C.A. No. 15-1323

## In the
## UNITED STATES COURT OF APPEALS
### for the Sixth Circuit

WILLIAM BROWN III,
*Plaintiff-Appellant*,

v.

VAN RU CREDIT CORPORATION,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of Michigan, Southern Division
Hon. Victoria A. Roberts

## REPLY BRIEF OF PLAINTIFF-APPELLANT

Gary D. Nitzkin (P41155)
gary@credit-law.com
Travis L. Shackelford (P68710)
shackelford@credit-law.com
Edward A. Mahl (P27115)
ed@credit-law.com

MICHIGAN CONSUMER CREDIT LAWYERS
22142 West Nine Road, Southfield, Michigan 48033
(248) 353-2882/ FAX (248) 353-4840
*Attorneys for Plaintiff-Appellant William Brown III*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... iii

COURSE OF PROCEEDINGS………………………………………….. 1

SUMMARY OF FACTS………………………………...…………… 1

REPLY TO APPELLEE'S ARGUMENT

    I.     The Meaning of "Communication" in the FDCPA……………. 2
    II.    Applying the Definition of "Communication"............................ 5
          A.    Standard of perception
                1.    Least sophisticated consumer…………………... 6
                2.    "Reasonable person" or actual hearer…………… 6
          B.    Using a literal interpretation of the term ……..……..
                1.    Voicemail message………………………………. 7
                2.    Earlier letters…………………………………….. 7
          C.    Using a judicially-glossed interpretation
                1.    Case law relied upon by Appellee
                        *Brody*………………………………….……..… 8
                        *Marx*…………………………….………….......  9
                        *Hanson*…...................…..………....……..…..... 12
    III.    Appellee's Comments about the Voicemail Message…...…… 13
    IV.    Appellee's Discussion of Cases Cited by Appellant………….. 13
    V.    Appellee's Discussion of Possible Claim under §1692g……... 14

CONCLUSION………………………………...…………………... 14

CERTIFICATE OF COMPLIANCE…………...…………………. 16

CERTIFICATE OF SERVICE……………………………………….. 17

## TABLE OF AUTHORITIES

## STATUTES

15 USC §1692(a)...………………………………………………………...... 3
15 USC §1692(e)........................................................................................... 4
15 USC §1692a(2) ................................................................... ..... 2
15 USC §1692a(7).......................................................................................... 2
15 USC §1692b…........................................................................................ 2,3
15 USC §1692c(b)........................................................................................... 2
15 USC §1692e……………………………………………………………….. 11
15 USC §1692g............................................................................................ 14

## RULES

Fed. R. Civ. P. 12(b)(6) …….................................................................... 12
Fed. R. Civ. P. 12(c)................................................................................ 10,14

## CASES

*Belin v. Litton Loan Servicing LP,*
    2006 U.S.Dist LEXIS 47953 (MD Fla 2006)...................................... 13

*Brody* v. *Genpact Services LLC*
    980 F. Supp. 2d 817 (ED Mich 2013)................................................ 8,9

*Gillie v. Law Office of Eric A. Jones*
    6th Cir. Docket #14-3836…………………………………………….... 6

*Grden v. Leiken Ingber Winters PC,*
    643 F.3d 169 (6th Cir. 2011)............................................................ 5

*Hanson v. Green Tree Servicing, LLC*
    2013 U.S. Dist. LEXIS 120060 (D. Minn. Aug. 23, 2013)................. 8,12

*Henderson v. Eaton*
    2001 WL 969105, *2 (E.D. La. 2001)............................................. 13

*iii*

*Marshall v. Portfolio Recovery Associates*
    646 F. Supp. 2d 770 (ED Pa. 2009)...................................................... 6

*Marx v. General Revenue Corp.*
    668 F3d 1174 (10th Cir. 2011)............................................................ 6,9,
                                                                                      10,11
*Tilcon Minerals v. Orange and Rockland Utilities*
    851 F Supp 529, 531 (SD NY 1994)..................................................... 14

## SECONDARY AUTHORITY

*Statements of General Policy or Interpretation Staff Commentary
on the Fair Debt Collection Practices Act.*
53 Fed. Reg. 50097-50110 (Dec. 13, 1988)..................................................... 13

## MEDIATION CONFERENCE

Appellee's Brief (hereinafter "V R Br.") starts with a gratuitous aside about the mediation conference, saying that Appellant chose to not participate. In fact, undersigned counsel called the Court and left a voicemail message saying that he would be handling the matter, in the absence of the counsel of record, who was on vacation. But the Mediator chose to not call undersigned counsel because he had not yet filed an Appearance. Admittedly, this mix-up was the fault of undersigned counsel but it is not the result of any intent to ignore the Court's procedures.

## SUMMARY OF FACTS

William Brown III incurred student loan debt. After he completed his education and set up a business, Legacy PC. Van Ru Credit Corp. was apparently retained by the DOE to collect the debt. Brown remembers getting a letter at his business from Van Ru in late March or early April 2014 asking for his payroll information. We do not know who, other than Brown, saw this letter.

Then on April 15, 2014, "Kay" called a general mailbox, accessible to the employees, at the business and left a message. The message said that she was an employee of Van Ru Credit Corporation trying to contact the Payroll Dept., and asked for a return call. She left a toll-free number and Van Ru's file number. This message was heard by Brandon Harris, an employee, who knew that Van Ru was a

1

collection agency. It was also heard by Brown. The Complaint does not indicate if

the Payroll Department or other employees heard the message.

In addition to this message, the Answer filed by Van Ru includes a letter,

dated 12/23/14, purportedly sent by Van Ru to Brown at his residence. [Answer,

RE 6, ID #X-37, pp. 26, 27] This letter also sought payroll data for a wage

garnishment and threatened various actions if Brown failed to co-operate.

## REPLY TO APPELLEE'S LEGAL ARGUMENT

### I. MEANING OF "COMMUNICATION"

> Except as provided in section 1692b of this title, without the prior
> consent of the consumer given directly to the debt collector, or the
> express *permission of a court* of competent jurisdiction, *or* as
> reasonably *necessary to effectuate a postjudgment judicial remedy*, a
> *debt collector may not communicate, in connection with the collection
> of any debt, with any person other than the consumer . . . .*

15 USC §1632c(b) (emphasis supplied).

15 USC §692b addresses skip-tracing ("location information"). [1] It strictly

limits the extent contact between a collector and a source of information.[2]

---

[1] "The term 'location information' means a consumer's place of abode and his
telephone number at such place or his place of employment." 15 USC §1692a(7).

[2] Any debt collector communicating with any person other than the consumer *for
the purpose of acquiring location information* about the consumer shall—
(1) identify himself, state that he is confirming or correcting location information
concerning the consumer, and, only if expressly requested, identify his employer;
(2) not state that such consumer owes any debt;
(3) *not communicate with any such person more than once* unless requested to do
so by such person or unless the debt collector reasonably believes that the earlier

2

Van Ru argues that §1692c(b) is irrelevant because it is premised upon the happening of "communication", which supposedly never happened.

§1692a(2) defines this crucial term: "The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." This definition is broad, but has not been consistently applied by courts. In line with the judicial policy of construing the FDCPA for the benefit of consumers, as well as the policy of furthering the purposes of the FDCPA, the term should be given broad effect.

§1692 identifies the problems which the FDCPA was supposed to address:

> There is abundant evidence of the use of abusive, *deceptive*, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the *loss of jobs*, and to *invasions of individual privacy*. (Emphasis added.)

The emphasized portion of this quote mentions problems involved here .

---

response of such person is erroneous or incomplete and that such person now has correct or complete location information;

(4) not communicate by post card;

(5) *not use any language* or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or *that the communication relates to the collection of a debt;* and

(6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector. (Emphasis added.)

3

The purposes of Congress were identified in §1692(e):

> It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

At least one of these declared purposes -- avoiding competitive disadvantage for those collectors who obey the rules – is involved here.

Since FDCPA goals may conflict in particular cases, the acceptable level of disclosure may vary depending on the mix of variables such as the communicant, the purpose of the contact, the collector's intent, and good faith.

Consider types of third party communicants: 1) persons with power over the consumer; 2) persons in a professional relationship with the consumer; 3) family members; 4) friends; 5) neighbors; and 6) strangers.

Consider the motives of debt collectors: 1) seeking location information; 2) seeking collection information; 3) seeking competitive advantage; 4) inducing contact by the debtor; 5) scaring the debtor into paying the debt.

Consider the level of care. Collectors may make inadvertent contacts with third parties, as where a voice mail message is overheard. Sometimes these are easily foreseeable (e.g., voice mail system at work), sometimes not so much.

In specific situations, these variables, and others, will be present in different degrees. For example, where an employer is involved, a Court will want to limit

4

the information conveyed to zero, and where strangers without power are involved, a higher level of disclosure will be acceptable. Where the actions of the collector seem duplicitous, a Court may be less inclined to accept rationalizations.

Van Ru does not seek shelter in the "safe harbor" of "location information". Instead, Van Ru asserts that there was simply no "communication" because the voice mail message conveyed *no debt information.*

Appellant would argue that where an unauthorized contact with a third party is made, and there is an intent to collect the debt, any level of disclosure is improper. *Grden v. Leikin, Ingber & Winters PC,* 643 F.3d 169 (6th Cir. 2011) partially supports this view. *Grden*, at p. 172, said:

> [F]or a communication to be in connection with the collection of a debt, *an animating purpose* of the communication must be to induce payment by the debtor.  (Emphasis added.)

In other words, words are not necessary to disclose intent.  Where intent exists, the reason for the call will likely be grasped by the hearer.  Van Ru distinguishes *Grden* on the basis that it involved a letter rather than a telephone call.  V R Br. p. 6.  But it is hard to see why the medium is important, and, in any case, the Complaint alleges that there *was* a letter from Van Ru to Legacy PC.

## II.  APPLYING THE DEFINITION OF "COMMUNICATION"

### A.  Determination of the Proper Standard of Perception

5

**1.    Least Sophisticated Consumer.**  V R Br. pp. 7-8 insists that the issue of whether a third party contact is a "communication" must be decided under the "least sophisticated consumer" standard.  This is illogical since the consumer will usually not see or hear the contact. Appellee's authority -- *Gillie v. Law Office of Eric A. Jones,* 6th Cir. Docket #14-3836 -- involved deceptive dunning letters, on Ohio AG letterhead, *to consumers*. See slip op. at p. 6.  In such a case, use of the unsophisticated consumer test furthers the ends of the FDCPA.  Here it does not.

**2.    Reasonable Person or Actual Hearer Standard**.  Since the object of the FDCPA in the case of third party communications is to reduce disclosure to the lowest possible level, it is arguable that a "most sophisticated consumer" standard is appropriate, on the reasoning that the smarter the hearer is, the more likely he or she will grasp what is happening.  But no Court has yet accepted this view.

However, the unsophisticated consumer standard has been rejected in the case of communications to a debtor's   attorney.   See *Marshall v. Portfolio Recovery Assocs.*, 646 F. Supp. 2d 770 (ED Pa. 2009).  As discussed below, in *Marx v. General Recovery Service, infra,* on which Appellee chiefly relies, the trial judge applied a reasonable person standard to this question.

There is no apparent reason why the understanding of the *actual* hearer should not be determinative.  The debt collector creates the risk of who actually overhears the message.  As in tort law, he should take the victim as he finds him.

6

If a subjective standard were used, Harris (and others) would be allowed to testify. If a "reasonable person" standard were used, the jury (the voice of the community's commonplace understandings) should decide the matter.

## B.   A Literal Interpretation of "Communication"

If this definition is applied literally, every contact that transmits, in any way, a datum re a debt is a communication, regardless of the hearer's understanding.

**1)   The Voice Mail Message.** The voicemail explicitly revealed at least one datum about the subject debt: Van Ru's file number. Other facts were implicitly or "indirectly" revealed: an intent to garnish;   involvement of a debt collector; involvement of a large company, with a toll free number, that was interested in Brown, but did not want him to know this fact.

**2)   The Earlier Letter from Van Ru.** The Complaint alleges that before the voicemail message was received, there was an earlier letter from Van Ru to the business seeking Brown's payroll information. If this letter was sent and received, and if it conformed to the letter which Van Ru attaches as exhibit #1 to its Answer, that letter would have explicitly revealed that Van Ru was a debt collector and that it was trying to collect a debt owed by Brown. Such a letter would have been a *per se* FDCPA violation since it did not fall into any exceptions for third party communications. The truth regarding this letter, and other relevant facts, has not been determined because this case was dismissed at the pleading stage.

7

Furthermore, aside from being a violation in itself, it "educated" the Payroll Department and other employees, like Harris, as to the underlying facts, so that when the voicemail message was received in April, they would have immediately known the purpose of the telephonic contact. Earlier contacts color the hearer's perception of subsequent contacts.

## C.    Appellee's Broader Interpretation of "Communication"

Despite her professed dedication to the statutory text, Defendant's counsel does not really want this Court to apply it literally. Instead, she wants to add three glosses:  1)  a mere datum will not suffice to establish a "communication" but rather the acceptable level of disclosure is gleaned from case law;  2) the "hearer" must understand the meaning of the information conveyed; and 3) that "hearer" must be a hypothetical "unsophisticated consumer."

## 1.    Cases Relied upon by Appellee

The text  at V R Br. pp. 9-12  reaffirms Appellee's reliance upon three cases: *Brody*  v. *Genpact Services LLC,* 980 F Supp  2d 817 (ED Mich 2013);  *Marx* v. *General Revenue Corp.,* 668 F3d 1174 (10th Cir 2011); and  *Hanson v. Green Tree Servicing LLC,* 2013 U.S. Dist. LEXIS 120060  (D. Minn. Aug. 23, 2013).

***Brody.***  It is odd that Appellee continues to rely upon *Brody.* It was pointed out in Appellant's principal Brief that Judge Friedman rejected the applicability of

8

one of the cases cited by the Plaintiff in that case because the voicemail message in

that case *had disclosed a file number*. *Brody* at 821. We quote:

> Furthermore, although plaintiff's response brief cites numerous cases
> in support of her position that defendant's voicemail message is a
> "communication," those cases were factually inapposite. See e.g.
> Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350, 1351 (11th
> Cir. 2009) (collection call referenced plaintiff's file number) . . . ..

The implication is clear that the presence or absence of a file number is crucial.

*Marx.* *Marx* is the best authority for Appellee, and thus deserves closer

examination at all three levels: district; appellate; and Supreme Court.

*Marx* was not decided by motion. The parties engaged in discovery. [See

USDC Colo. Docket #1:08-cv-02243-RPM-CBS. Designation of Deposition

Testimony RE 64. Pages 1-2.] After a full day of trial, the court found in favor of

GRC. [*Id.* Clerk's Judgment RE 74, 1 page] The judge was apparently surprised

that Marx had not called a witness as to her employer's understanding of the fax.

See GRC's Brief filed in the Supreme Court.[3] The Tenth Circuit also noted this

failure. 668 F3d at 1177. In other words, Ms. Marx failed to prove her case.

---

[3] Supreme Court docket #11-1175, Brief of Respondent in Opposition, at fn. 2:
"The district court did not, as Petitioner suggests "dismiss" the § 1692c(b) claim
(Pet. 7); nor did the district court hold that "a debt collector can contact an
employer to ask for information in addition to 'location information' as long as the
employer does not know that the request is coming from a debt collector." Pet. 7.
*Rather, after closing arguments, the district court simply noted that there was no
evidence from Petitioner as to what the employer interpreted the fax to relate to,
which necessitated the court, as the fact finder, to interpret whether the fax*

9

Nothing in the district court record suggests that a motion to dismiss under
Fed.R.Civ.P. 12 (c) would have been granted.  The court plainly believed the
actual or reasonable interpretation of the fax was a question of fact. It is also
notable that the Court did not apply a "least sophisticated consumer" standard to
this question.

The 10th Circuit upheld the district court judgment, splitting 2-1.    The
majority opinion was based on its self-created definition of "conveyance" to mean
"understanding" rather than "transmission."    *Marx* at 1182-83.

*Marx* went to the US Supreme Court on the issue of costs, not relevant here.
But GRC's Responsive Brief, at pp. 3-4, is relevant because it suggests that GRC
deceived the employer about why GRC was contacting it.  We quote:

### Statement of the Case

Petitioner defaulted on her student loan, which was assigned by
the guarantor, EdFund, to GRC for collection. Pet. App. 2a. Petitioner
filed her lawsuit in October of 2008, alleging various violations of the
Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. Id.
Petitioner amended her complaint in March of 2009 to add a claim
that GRC violated § 1692c(b) of the FDCPA by sending a facsimile
document to Petitioner's place of employment (the fax). Id.; see Tenth
Cir. App. 113. *The fax was a standard form utilized by GRC for the
purpose of determining a consumer's eligibility for administrative
wage garnishment, and states that the purpose of the document is to
"verify employment." Pet. App. 4 3a.* The fax was specifically

---

*conveyed information regarding a debt. Pet. App. 33a.*" (Emphasis added.) The
Brief may be found at www.SCOTUSblog.com/case-filed/cases/[name of case].

10

designed by GRC to avoid any implication of a debt. Id. at 5a. *The fax
requested information regarding the Petitioner's employment status,
date of hire, payroll address, position, and whether the Petitioner
worked full or part time. Id. at 3a.* The fax also contained GRC's
corporate name and logo, its address, and phone number. Id. The fax
included an "ID" number which corresponded to Petitioner's internal
account number with GRC, with the use of the term "ID" rather than
"account" being intentional so not to imply the existence of a debt. *Id.
at 5a.* (Emphasis added.)

Further light is thrown on the tactics of GRC,[4] and presumably other student

loan collectors, by the Magistrate's Report and Recommendation in *Marx*:

While the Higher Education Act permits guarantors to
administratively garnish wages, the Department of Education
("DOE") specifically regulates the procedure for wage garnishments.
See 20 U.S.C. §1082(a)(1). In that regard, the DOE has approved a
form notice for guarantors *to send to debtors* when initiating
garnishment proceedings. Maynard v. Premiere Credit of N. Am.,
2007 WL 1128082, at *3 (W.D. Wash. 2007). "The DOE forms were
not simply optional suggestions; they were mandatory." Kort v.
Diversified Collection Serv., 394 F.3d 530, 534 (7th Cir. 2005). While
these forms were designed to be FDCPA Complaint, it is still possible
for communications to violate the FDCPA even though they literally
satisfy notice requirements under the HEA. (Emphasis added.]

[*Id.* Report and Recommendation RE 52 Pages 1-10, pp. 5-6.]

Using a "employment verification" form as a means of gaining wide-ranging

collection information is deceptive under §1692e. Deceiving the employer as to

the purpose of the contact is a misrepresentation under §1692e. The published

standards of the collection industry standards prohibit this kind of overreach.[5]

---

[4] GRC is a quasi-government entity formed by Sallie Mae. See Respondent's
Brief, p. ii. This fact should not, but may, have affected the decision. Van Ru's
client in this actions seems to be Sallie Mae, as displayed on its letterhead.

***Hanson***. *Hanson* involved a voice mail message from a mortgage servicer left on the answering machine of Hanson's brother. It appears that the caller thought she was leaving a message for Hanson herself. The message identified the caller as a representative of Green Tree Servicing, one of the largest mortgage servicers in the country. She provided an 800 number and asked Hanson to call her back. On a 12b(6) motion, and relying on *Marx*, the district court judge agreed that no meaningful disclosure had taken place.

*Hanson* is easily distinguishable. *First*, Green Tree is known primarily to be a mortgage servicer. *Second*, no file number was provided in the message. *Third*, no payroll or personal financial information was sought. *Fourth*, although not recognized by the parties, there was a proof problem because the message had not been retained. The "record" of the phone call was the recollection of its contents by Hanson's brother. It is likely this would have excluded as hearsay. *Fifth*, the party contacted there was not someone who had power over Hanson. *Sixth,* the message to the brother seems to have been a mistake. *Seventh*, the message was not preceded by a letter to the brother. *Eighth*, the fact that Hanson was trying to parlay this one contact into a class action suit may have been viewed by the judge as an abuse of the system.

---

[5] The Amicus Curiae Brief of the Consumer Financial Protection Bureau filed in *Marx* discusses, at pp 12-13, collection industry manuals which restrict the data that may be sought from an employer. [10th Circuit Appellate Case: 10-1363 Document: 9937845 Date Filed: 01/26/2012]

### III. APPELLEE'S COMMENTS ABOUT THE VOICEMAIL

At V R Br. pp. 13-16, Appellee's counsel opines freely as to the import of the parts of the voice mail message. Not surprisingly, she finds that each one is innocent. For example, she suggests at p. 13 that the term "Credit" is innocent because Appellant's law firm uses the word "credit" in its name. This is illogical because there is no inconsistency between being a law firm and being a debt collector. It also ignores the data provided by Brown in the district court showing that many collection agencies use a variant of "credit" in their names.

A more general objection is that she ignores that a hearer will consider the parts of a message together. And the hearer will judge it in light of earlier communications. FTC Staff Commentary, 53 Fed.Reg. 50097-50110 (Dec. 13, 1988) at 50099 ("Significant Public Comments Not Adopted", §1).

The question is not certainty but probabilities. The use of the word "credit" increases the risk that a contact will be perceived as being from a collector.

In general, Appellee's remarks should be saved for closing argument.

### IV. APPELLEE'S DISCUSSION OF CASES CITED BY APPELLANT

The bulk of the relevant case law supports Appellant's position. *Belin v. Litton Loan Servicing LP,* 2006 U.S.Dist LEXIS 47953 (MD Fla 2006). This includes the special situation of procuring information from employers. *See e.g.,*

13

*Henderson v. Eaton*, 2001 WL 969105, * 2 (E.D. La. 2001) (letter to a third-party requesting earnings information could imply the existence of a debt).

At V R Br., pp 16-18, Appellee discounts several cases cited by Appellant on the basis that they involved communications to *consumers,* not third parties. This is a fair point, but elsewhere Appellee emphasizes the FDCPA has only one definition of "communication". If Appellee believes one definition is controlling, then consumer contacts are relevant in judging the level of acceptable disclosure.

## V. DISCUSSION OF POSSIBLE CLAIM UNDER §1692g

At VR Br. pp. 18-20, Appellee discusses whether Appellant has a claim under §1692g (failure to validate a debt). As a fall-back position, if otherwise unsuccessful, Van Ru requests a partial judgment as to that claim at least.

It is unclear that there is such a thing as a partial judgment on the pleadings. But even if there is, piecemeal adjudication is not favored. *Tilcon Minerals v. Orange and Rockland Utilities.* 851 F. Supp. 529, 531 (SD N Y 1994).

## CONCLUSION

This case is at the initial pleadings stage. Not a single deposition has been held and not one interrogatory has been served. Pleadings are not substitutes for evidence, and motions are not substitutes for trials.

This case involves one, or possibly two, contacts from Van Ru to one, or more, employees of Legacy PC. It may also involve a direct contact from Van Ru

to Brown. It involves one or two *indirect* contacts with Brown by Van Ru. At this point, this appears to be a "third party contact" case, with the dispositive issue being how a reasonable person would, or the actual recipient did, perceive these contacts. But it is also possible that discovery will reveal other claims, perhaps a claim involving a deceptive device to improperly gain collection information from Brown's employer, i.e., his own business. The only question at his point is whether the Complaint, viewed in a light most favorable to the Plaintiff, and drawing reasonable inferences in favor of the Plaintiff, states a *plausible* claim upon which relief might later be granted under any theory.

Is it really implausible to suggest that a reasonable person, in the payroll department of a business, would likely interpret the subject voicemail message as being from a debt collector, especially in light of the earlier letter allegedly sent to the business by that collector?

Respectfully submitted,

MICHIGAN CONSUMER CREDIT LAWYERS

By: /s/ *Edward A. Mahl*

DATED:    June 24, 2015

15

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3857 words, as determined by the word count function of Microsoft Word 2007, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(111).

This Brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportional typeface using Microsoft Word 2007 in 14-point "times new roman" font.

/s/ *Edward A. Mahl*
Edward A. Mahl, Esq.
Counsel for Plaintiff-Appellant

Dated: June 24, 2015

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date the foregoing document,

Appellant's Reply Brief on Appeal was filed and served on all parties or their

counsel of record via the CM/ECF Document Appellate Filing System.


/s/ *Edward A. Mahl*

Edward A. Mahl, Esq.
Counsel for Plaintiff-Appellant


Dated: June 24, 2015